**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NANCY HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 02-593 |
| PITTSBURGH BOARD OF PUBLIC | ) |
| EDUCATION, SCHOOL DISTRICT | ) |
| OF THE CITY OF PITTSBURGH and | ) |
| JEAN FINK, ELISABETH HEALY, | ) |
| ALEX MATTHEWS, EVELYN B. | ) |
| NEISER, MAGGIE SCHMIDT, | ) |
| RONALD L. SUBER, RANDAL | )        ( |
| TAYLOR, JEAN E. WOOD and | ) |
| DARLENE HARRIS, individually, | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| JOHN DEVINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil No. 02-594 |
| PITTSBURGH BOARD OF PUBLIC | ) |
| EDUCATION, et al. | ) |
| | ) |
| Defendants. | ) |

## **OPINION**

Plaintiffs Nancy Hayes and John Devine ("Plaintiffs"), applicants for teaching positions

with the School District of Pittsburgh ("School District"), bring these two identical suits under

1

42 U.S.C. § 1983, alleging that the defendants violated their constitutional right to due process of law. On April 29, 2003, we granted defendants' motions to dismiss Counts II of the Complaints. Plaintiffs subsequently filed Amended Complaints. In the remaining causes of action, plaintiffs allege violations of the Civil Rights Act of 1871 (Count I), an Action in Mandamus (Count III), and an Action for Declaratory Judgment (Count IV).

Presently before the Court are defendants' Motions for Summary Judgment as to these remaining claims. For the reasons stated herein, we will grant the motions in full.

## I. Background

The School District is statutorily required to hire applicants for teaching positions from within the top ten percent (10%) of an eligibility list or from the top five(5) of the eligibility list, whichever is greater. 24 P.S. § 21-2110. This means that an applicant must appear within the top 10 percent of the list (or the top five, whichever is greater) to be eligible for hire. Stana v. School Dist. of the City of Pittsburgh, 775 F.2d 122 (3d Cir. 1985). Both plaintiffs were on an eligibility list at the School District and take issue with the School District's hiring of teachers from their respective eligibility lists. Ms. Hayes was on the eligibility list for early childhood teaching positions, while Mr. Devine was on the eligibility list for biology teaching positions.

Plaintiffs allege that the "School District has an established policy for giving eligibility examination [sic], placing job applicants on an eligibility list according to their performance on an eligibility examination and maintaining the names of eligible applicants on a year to year bases [sic]. The School Board sends out a letter asking the teacher if she wants to remain on the list. If the teacher says "yes" then the teacher is retained on the list for the next year." Amended

2

Complaint ¶ 4.[1] The plaintiffs then allege that they had taken and passed the examination, were placed on the eligibility list and expressed an interest in remaining on the list. Amended Complaint ¶ 6. Plaintiffs further allege that despite being promised notification of a job opening and a promise "to award [them] a teaching position according to [their] standing on the list", they were not notified of their ranking or given an interview, but instead the School District gave the job to a lower ranked individual without plaintiffs first being afforded notice or opportunity to be heard. Amended Complaint ¶¶ 7, 8.

Both plaintiffs argue that there are three general policies or customs that caused their injuries. First, plaintiffs assert that there is a "ten ring" policy which authorizes principals or their support staff to consider an applicant "unavailable" for hire if his or her phone rings unanswered ten times. Amended Complaint ¶ 10. Next, plaintiffs assert that there is a custom or policy of passing over applicants within the top five or top ten percent without contacting them to offer them an opportunity to be interviewed for that particular position. Amended Complaint ¶¶ 8, 14. Finally, plaintiffs assert that there is a policy or custom of hiring applicants who are not in the top five or ten percent of the applicable eligibility list. Amended Complaint ¶ 8.

At Count I, Plaintiffs allege that all applicants who apply for teaching positions in the Pittsburgh Public Schools have a due process right to retain their positions on the teachers eligibility list and that defendants violated that right by passing over their names on the list and hiring a lower ranking applicant without notice and opportunity to be heard. Amended Complaint ¶ 14. In their motions for summary judgment, defendants assert that the section 1983

---

[1]   Because they are identically worded except for the plaintiffs' names, we will refer to the Amended Complaints in the singular for citation purposes.

3

claims must fail because plaintiffs have no evidence that there is an unconstitutional custom or policy, attributable to the defendants, the execution of which caused the alleged injury. At Count III, plaintiffs request that we issue a writ of mandamus directing the School District to retain them on the eligibility list, give them proper notice and opportunity to be heard if they are bypassed on the list, and to award them full time teaching positions within the Pittsburgh Public Schools. Amended Complaint ¶ 27. In a similar vein, at Count IV, plaintiffs seek a declaratory judgment. Amended Complaint ¶ 34. In response, defendants ask that we decline to exercise pendant jurisdiction over these two state law claims, or, alternatively, grant their motions for summary judgment on the grounds that the plaintiffs have not developed facts to support such claims.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. . . ." Id. at 586-87 (citations omitted). When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .." Id. (citations omitted). The nonmoving party "must present affirmative

4

evidence in order to defeat a properly supported motion for summary judgment," and cannot

"simply reassert factually unsupported allegations contained in [the] pleadings." Williams v.

Borough of West Chester, 891 F.2d 458, 460 (3d Cir.1989) (citation omitted). However, "[i]f the

[nonmoving party's] evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986) (citations

omitted).

**III. Discussion**

In support of their motions for summary judgment, in each of the cases presently pending

before the Court, the Defendants have attached affidavits of Marlene A. Harris, previously an Act

48 Project Assistant whose responsibility it was to handle the process and production of all

eligibility lists, including the administration of what is referred to as the "rolling" top ten percent

or top five list. See Affidavit of Marlene A. Harris, Exhibit to Defendants' Concise Statement of

Material Facts at C.A. 02-593 ("Harris Aff. – Hayes"), App. 1 to Doc. 28, and Affidavit of

Marlene A. Harris, Exhibit to Defendants' Motion for Summary Judgment at C.A. 02-594

("Harris Aff.– Devine"), Doc. 15. Ms. Harris' affidavits provide a convenient summary or

outline of the hiring process in the School District. Overall, the factual averments contained in

her affidavits are largely uncontradicted by the plaintiff, unless otherwise noted.

Applicants for a teaching position at the Pittsburgh Public Schools must complete an

application and attach all transcripts, reference letters, and PRAXIS scores or a copy of a

teaching certificate. Harris Aff.– Devine ¶ 3. Human Resources then evaluates an applicant's

credentials and hand-scores the applicant; demographics and scores are logged onto a computer

which ranks applicants based on a total number of points. This ranking becomes the eligibility

5

list for each subject matter. Harris Aff. – Devine ¶ 4. After the applicant's name is placed on the appropriate eligibility list, an applicant must wait until he or she is within the top ten percent or top five (whichever is greater) on the list in order to be eligible for hire. Harris Aff. – Devine ¶ 6.

The Human Resources Department is responsible for maintaining the eligibility list and properly administrating the determination of the rolling top ten percent or top five. Harris Aff. – Devine ¶ 2. For the ten years prior to the date of her affidavit, Ms. Harris was responsible for maintaining and updating the eligibility lists for applicants to be considered for employment as teachers in their certification area. Harris Aff. – Hayes ¶ 2. Each year, Ms. Harris generated eligibility lists in late May or early June for the following school year's hiring decisions. Harris Aff. – Hayes ¶ 7. The School District is required to have a separate eligibility list of each subject. Harris Aff. – Hayes ¶ 8.

When a vacancy occurs, the Human Resources Department sends the names of the individuals in the top ten percent or top five to the applicable principal. Harris Aff. – Devine ¶ 7; Harris Aff. – Hayes ¶ 3. The principals, or their staff, make phone calls to schedule any necessary interviews. Harris Aff. – Devine ¶ 8; Barnett Dep. at 6-7, 13; Kemp Dep. at 6-7, 8-9.

Prior to a hiring decision, applicants who fail to answer the phone are not informed that they could not be reached by telephone or otherwise, because the schools do not have sufficient resources and time to provide written or subsequent notice. Harris Aff. – Devine ¶ 10, 12. Applicants are required to provide, each year, detailed contact information specifically for the purpose of reaching the applicant during the hiring process, and principals and/or their support staff make several attempts to contact applicants within the top five or top ten percent. Harris

6

Aff. – Hayes ¶ 9. Harris further explained that some applicants who are not available are passed over and more people are then added to the list from the lower 90%; thus the principals have a "rolling" list of the top ten percent (or top five) of eligible applicants. Harris Aff. – Devine ¶ 9, 10. A top ten percent (or top five) applicant is "not available" when he or she fails to return numerous telephone calls from the school to schedule an interview, when he or she has indicated that other employment has been found, or when the applicant is not interested in the position. Harris Aff. – Devine ¶ 10. Before obtaining additional names from Human Resources beyond the list of the top candidates provided, principals must demonstrate an attempt to call; messages are left and times and dates of phone calls are recorded. Harris Aff. – Hayes ¶ 10. It is only after several documented attempts are made that an applicant is considered unavailable for purposes of moving on to another candidate on the list of applicants. Harris Aff. – Hayes ¶ 11. According to the defendants, before adding applicants to the rolling list of top ten percent (or top five) applicants, those who fail to answer the phone are called numerous times and at different times of the day. Kemp Dep. at 8, Barnett Dep. at 13.

After the interview process is complete, the principal with a vacancy contacts the Office of Human Resources and provides the names of the top three individuals recommended for hire. Harris Aff. – Devine ¶ 13. The names of the candidates recommended for hire are then reviewed to verify that their names were on the applicable eligibility list submitted to the principal. Harris Aff. – Devine ¶ 14. Principals are free to select, interview and recommend for hire any applicant among the top ten percent or top five on the applicable eligibility list. Harris Aff. – Devine ¶ 15; Kemp. Dep. at 12; Barnett Dep. at 12-13. The School Board ultimately confirms the hiring of recommended candidates. Harris Aff. – Devine ¶ 18.

7

As the school year progresses and applicants are hired off the eligibility list, Harris recalculated the top ten percent of applicants accordingly. Harris Aff. – Hayes ¶ 15.

Applicants who are passed over are retained on the eligibility list for the next year's hiring decisions so long as they return the District's standard form which indicates that the applicant is still interested and available for employment and requests updated contact information. Harris Aff. – Devine ¶ 5. This "Eligibility List Credential Update Form" states: "FAILURE TO RETURN THIS FORM BY FEBRUARY 24TH WILL RESULT IN REMOVAL OF YOUR NAME FROM THE ELIGIBILITY LIST AND ALL MATERIALS YOU HAVE SUBMITTED WILL NO LONGER BE MAINTAINED IN OUR FILES." Ex. 8 to Pl.'s Br. In Opp. of Summ. Judgment (Doc. 15 at C.A. 02-593, Hayes). We note that there is no dispute that for the school years at issue, both plaintiffs returned this standard form as required.

## C. **Applicable Law**

### 1. **Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that government may not deprive an individual of life, liberty, or property without due process of law. U.S. Const. Amend. XIV. There can be no deprivation of the right to procedural due process unless a plaintiff has a protected property or liberty interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). A property interest must arise from an independent source such as a state or federal statute, municipal ordinance or charter, an express or implied contract, or a contract implied from policies and practices of a particular institution. Perry v. Sindermann, 408 U.S. 593, 601 (1972). The protections of the due process clause apply to government deprivation of those perquisites of government employment in which

8

the employee has a constitutionally protected "property" interest. Roth, 408 U.S. at 578.

Evaluation of due process claims requires two steps: (1) courts must determine whether a liberty or property interest exists which entitles an individual to due process protection; and (2) if such an interest is found, the courts must determine what process is due. Hewitt v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986). Due process is flexible and calls for such procedural protections as the particular situations demand. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Where a state must act quickly, or where it would be impractical to provide predeprivation process, post deprivation process satisfies the requirements of the due process clause. See Gilbert v. Homar, 520 U.S. 924, 930 (1997), and citations therein. In Parratt v. Taylor, 451 U.S.527, 540 (1981), the Supreme Court noted that it had "rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property." Three factors are relevant in determining what process is constitutionally due: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

As the attorneys in these actions are aware, this member of the Court was assigned the case of Reed v. Pittsburgh Board of Public Education, et al, C.A. No. 99-1150, W.D. Pa. (W.D. Pa. Aug. 8, 2002); these two cases presently before me were designated as "related" to that action. In Reed, plaintiff, who unsuccessfully sought class action certification, was an applicant for a teaching position with the School District; she alleged very similar facts to those alleged herein, and charged that these defendants violated her constitutional right to due process of law,

9

breached its contract, and were subject to an action in mandamus. We granted summary

judgment in favor of the defendants. Reed v. Pittsburgh Bd. of Pub. Educ., C.A. No. 99-1150

2002 WL 32397123 (W.D. Pa. Aug. 8, 2002). The United States Court of Appeals for the Third

Circuit affirmed, 2003 WL 21246536, No. 02-3478, 65 Fed. Appx. 416 (3d Cir. May 30, 2003).[2]

The outcome of the Reed case, in large part, was determined by the interpretation of Stana v.

School Dist. of City of Pittsburgh, 775 F.2d 122, 126 (3d Cir. 1985).

In Stana, the court held that retention on a teacher eligibility list *can* implicate

constitutional property interests. Id. The plaintiff in Stana was a teacher certified to teach

chemistry and general science, who applied for a teaching position with the Pittsburgh School

District. Id. at 124. Under Pennsylvania law (at that time), the superintendent of schools was

required to maintain eligibility lists arranged in ranked order and no teacher was to be appointed,

promoted or transferred to a teaching position unless that person was *one of the three* top ranked

candidates on the eligibility list. Id. A teacher's name would usually remain on the eligibility list

for four years, unless the candidate failed to respond to inquiries regarding their current status.

Id. Stana became one of the top three candidates on the eligibility list in 1981. Id.

In 1982, the assistant director of personnel for the district noted that Stana was teaching at

a private high school and contacted that school's principal for his evaluation of Stana. Id. The

principal stated confidentially that Stana's performance was unsatisfactory. Id. The assistant

director convened a committee to meet and review Stana's credentials. Id. Shortly before that

meeting, a chemistry position became available in the district. At that time only two teachers were

on the eligibility list, Stana and another teacher. The director knew that the other teacher was

---

[2] Ms. Hayes and Mr. Devine filed these civil actions prior to this affirmance.

10

unavailable. Stana was bypassed for the position and the position was advertised and subsequently filled with someone not on the list. Id. When Stana contacted the district about the opening, she was told that the position had been filled. Id. A month later, she was notified in writing that she had been removed from the eligibility list pursuant to the credentials committee re-evaluation. Id. At a subsequent meeting, Stana learned for the first time that negative confidential information had been received about her performance at the private school. Id.

Stana filed suit alleging a denial of procedural due process arising from the failure to provide her with notice and an opportunity to be heard concerning the negative confidential evaluation prior to being bypassed for the position and removed from the eligibility list. Id. at 125. Stana argued that she had a constitutionally protected property interest in her proper classification on the eligibility list maintained by the School District, arising from the established policies of the School District and Pennsylvania Public School Code, 24 Pa. Stat. Ann. § 21-2110. The United States Court of Appeals for the Third Circuit held that retention on a eligibility list which was a sine qua non for placement in a teaching position implicated a constitutional property interest. Id. at 127. The court concluded that the district's policy of placement, ranking, and selection of candidates from an eligibility list and retention of a candidate's name on the eligibility list for a specified period of time constituted a mutually explicit understanding and a policy or rule sufficient to give rise to a property interest in retention on the list. Id. The act of a supervisory school district employee in bypassing an eligible teacher for a vacancy was not the type of "random and unauthorized act" for which a predeprivation hearing was not practicable, the court held, because, "[p]atently, when the acts at issue were those of an official in a supervisory position, acting within the area of his authority, the governmental entity was in a position to

11

provide some predeprivation process." Id. at 130.    After discussing the holdings in Matthews

and Parratt, the Stana court noted that "even if Pennsylvania had a procedure that might have

provided Stana some redress, an issue which the parties dispute, that does not diminish the nature

of the deprivation, which was the denial of procedural due process to Stana at a meaningful time

before her name was effectively removed from the list." Id. at 129.

In Reed, we weighed the precedential impact of Stana and examined the practices of the

School District to see what, if any, constitutional deprivation would occur where an applicant is

by-passed on the eligibility list:

> Stana does not stand for the proposition that -- in all cases -- the act of bypassing
> an applicant on the list is, in effect, a removal from the eligibility list, giving rise to
> due process rights. Id. at 127. Ms. Reed's situation is factually distinguishable
> because she was not removed from the list (as is demonstrated by the fact that she
> was hired in the 1999-2000 school year), but rather, Ms. Reed was bypassed on the
> list in 1996-1997. There is no evidence that there was a policy or practice of
> bypassing available candidates for unconstitutional purposes. The record indicates
> that the School District's failure to hire Ms. Reed in 1996-97 was a random,
> unauthorized act of a School District employee. The School Distirct did not realize
> its mistake in the next year because Ms. Reed appeared in the top ten percent of the
> list but was not selected by the hiring principals. ***Principals are free to select
> among the top ten percent of the eligibility list without constraints to select in
> any particular order.*** Brickhouse v. Spring Ford Area School Dist., 625 A.2d 711,
> 714 (Pa. Commw. 1993).
>     We also note that Stana failed in her argument that she had a property right
> to be appointed by the School District to the teaching position because she was the
> only available person on the eligibility list when a teaching position opened. Id. at
> 131. The Third Circuit rejected this argument, holding that the School District
> retains some discretion to bypass one or more names from the list in an appropriate
> situation. Id. The court noted that the purpose of the Public School Code is to
> establish a "thorough and efficient system of public education," which could not be
> served if the School District were required to hire as a teacher someone about
> whom it received negative information after that person's name was placed on the
> eligibility list. Id.
>     Moreover, in Stana the School district and the official responsible for the
> eligibility list on which Stana's name appeared had an established policy for
> placement and rank on the list and for maintenance of names on that list for a

12

specified period of time. ***Stana herself was informed by a school official that her name would remain on the list for four years; her name was removed from the list without notice and an opportunity to be heard before her time had run out.***

Reed, 2002 WL 32397123 *7-8 (emphasis added).

The defendants herein do not disagree that plaintiffs have a property interest based upon the practices of the Board to be maintained on the eligibility list once they meet all of the requirements and continue to return the annual form indicating that they want to remain on the list. Defendants concede that both Ms. Hayes and Mr. Devine met or exceeded that minimum passing grade on several occasions and thus qualified for placement on the eligibility list. The defendants, however, dispute that there has been an actionable violation of the plaintiffs' Fourteenth Amendment rights or § 1983.

As we did in Reed, we again emphasize that the Stana decision was rendered at a time when the Pennsylvania statute required that public schools hire one of the top three candidates; all that is required by statute now is that the school hire from within the top ten percent. Stana was removed from the eligibility list even though she had been informed that her name would remain on the list for several years. As will be explained in more detail infra, Ms. Hayes and Mr. Devine were not *removed* from the list. We quote the Stana decision:

> Stana's name was removed from the list without notice and an opportunity to be heard before two years had passed.
> It is evident that remaining on the eligibility list, which was a prerequisite to a teaching position, was a "legitimate entitlement" that the School District had created through the policies it promulgated to implement the state statute on teacher hiring. As such, it represented both an existing policy or rule and an explicit understanding sufficient to constitute a property interest, which triggered the requirement for an inquiry that comported with procedural due process.
> Stana was given no prior notice or any opportunity to be heard either before her name was bypassed *(an effective removal from the eligibility list under the circumstances*

13

*here)* or before her name was formally removed from the eligibility list.

775 F.2d at 126-27 (citations omitted) (emphasis added). In Stana, there was an intent by the School District to bypass Stana because of a bad reference. Due to the bad reference, the School District considered Stana to be "unavailable" until she was eventually removed from the eligibility list. As we held in Reed, Stana does not stand for the proposition that -- in all cases -- the act of bypassing an applicant on the list is, in effect, a removal from the eligibility list, giving rise to due process rights. Id. at 127.

### a. Ms. Hayes' Application

In her affidavit, Marlene Harris explains that some applicants for teaching positions are certified in more than one area and would appear on a separate list for each subject. For example, an applicant may be certified in special education and elementary education. Harris Aff. – Hayes ¶ 4. Plaintiff Nancy Hayes, however, is certified only in **early childhood** (pre-school through grade 3); she is not dual-certified. Harris Aff. – Hayes ¶ 21. Certain subject areas have overlapping certifications; for example, an early childhood certified teacher may teach pre-school through grade 3 and an elementary certified teacher may teach kindergarten through grade 6, thus all teachers on the elementary list may teach kindergarten through grade 6, but early childhood applicants are limited to teaching pre-school through grade 3. Harris Aff. – Hayes ¶ 5. Depending on the principal's preference or the position open, an elementary school principal may or may not receive both the elementary list and early childhood list when hiring. Harris Aff. – Hayes ¶ 13. Typically, principals hire from the elementary list for more flexibility to accommodate year to year movement of teachers. Harris Aff. – Hayes ¶ 14. In other words, it

14

may be preferable or more expeditious to hire someone who is qualified to teach K-8 for a second grade position because that same teacher may later be moved to teach the eighth grade. When Ms. Harris was notified that the principal had recommended an individual for hire from an eligibility list, she then took the necessary steps to remove the hired individual from the specific eligibility list from which he or she was hired, and also to remove that individual (if dual-certified) from any other eligibility list. Harris Aff. – Hayes ¶ 12, 16.

Ms. Harris further explains that the School District's Early Intervention Program provides special education services to pre-school age children (at all relevant times to Ms. Hayes' lawsuit, all pre-school positions were special education positions). Harris Aff. – Hayes ¶18. The Department of Education requires that pre-school, special education teachers have either an early childhood certification or a special education certification. Harris Aff. – Hayes ¶ 19. During the years at issue in this litigation, according to Ms. Harris, pre-school, special education teachers were subject to a much lower pay scale than school age teachers per the collective bargaining agreement, making pre-school, special education positions hard to fill and subject to a higher rate of turnover. Harris Aff. – Hayes ¶ 20.

As discovery appeared to narrow the issues in this case, and at defendants' request, plaintiff Hayes has identified three applicant-hirees whom she contends were taken out of turn on the eligibility list, which plaintiff argues was her unconstitutional "removal" from the list. These three are Leanne Wanielista, Kathleen Ennis and Maria Sleigh-Darsie. See Pl.'s Detailed Reply to Motion to Compel (Doc. 21) at pp. 2-5. The defendants explained and showed that each of these hirees was either dual certified or was hired from a separate eligibility list. For example, Wanielista and Ennis are dual-certified in early childhood and elementary. Harris Aff. – Hayes ¶

15

22. Sleigh-Darsie is dual certified in early childhood and special education. Harris Aff. – Hayes ¶ 30.

Ennis was hired for a short time in August 1997 to fill an Early Intervention Program position for students with exceptionalities (pre-school special education). Harris Aff. – Hayes ¶ 23; Stanger Aff. ¶ 8. Plaintiff has never applied for a pre-school special education position. Harris Aff. – Hayes ¶ 27. Ms. Ennis was not removed from the early childhood list when hired in 1997 for pre-school, which was the policy for the pre-school, special education positions, so that she could still be hired for school age positions. Harris Aff. – Hayes ¶ 24. Janice Matthew, the Early Intervention Program Administrator responsible for selecting Ennis for hire into the Early Intervention position, testified that she contacted or attempted to contact every individual on the list provided by the Board from the Early Childhood eligibility list. Matthew Dep., Exhibit A to Defs.' M. in Resp. To Pl.'s Supp. Br. in Opp. Of Summ. J. at pp. 7-9. Ms. Hayes has stated in her affidavit that she never received a telephone call or message on her answering machine from the School District employees.[3] When she exhausted the list provided by the Board, Ms. Matthew still had additional positions to fill. Id. She explained that it was difficult to fill Early Intervention positions because they did not pay a competitive salary, and thus, she was left with no option but to use referrals of individuals who were interested in the position. Id. Ennis was a referral with relevant experience for preschool special education, although she was not, at that time, on the

_____

3

Ms. Hayes has not presented any evidence that the conduct of Ms. Ennis was anything other than an unusual circumstance that year, or that there was an unconstitutional policy or custom in place; we only have her self serving affidavit. The Court does not believe that the outcome of the case would be any different under these circumstances.

16

eligibility list. Id. at 13-14.

For the 1998-99 school year, Ennis was hired for an elementary position at Carmalt Elementary School for grade 3 and was removed from the early childhood list. Harris Aff. – Hayes ¶¶ 25, 29; Stanger Aff. ¶ 6. The Carmalt Elementary School position was filled from the elementary list, not early childhood list. Harris Aff. – Hayes ¶ 26. Technically, Hayes was qualified to teach third grade, but she is not qualified to teach any higher grades. Carmalt Elementary holds classes for kindergarten through grade 8. Harris Aff. – Hayes ¶ 26. Again, Ennis was dual-certified in early childhood and elementary. Harris Aff. – Hayes ¶ 22. Typically, principals hire from the elementary list for more flexibility to accommodate year to year movement of teachers. Harris Aff. – Hayes ¶ 14.

For the 1998-99 school year, Wanielista was hired for an elementary position and thus was removed from the early childhood list. Harris Aff. – Hayes ¶¶ 28, 29. Ms. Wanielista was hired from the elementary list for a *grade 5* position at Mann Elementary. Stanger Aff. ¶ 5. Thus, Wanielista was not hired for a position for which Ms. Hayes was eligible.

In the 1999-2000 school year, Sleigh-Darsie was selected for a special education position from the Mental and/or Physically Handicapped list (MPH list) and was removed from the early childhood list. Harris Aff. – Hayes ¶ 31. [Harris Ex. 4; Stanger Aff. ¶ 7, Stanger Ex. 5] Thus, according to the defendants, Sleigh-Darsie did not fill a position for which Hayes was eligible, because Ms. Hayes was only eligible to teach grades K-3.

Thus, according to the defendants, plaintiff Nancy Hayes was not eligible for the positions of elementary and special education in the school years 1998-99 and 1999-2000, for which Wanielista, Ennis and Sleigh-Darsie were hired. Harris Aff. – Hayes ¶ 23.

17

As for the 2000-01 school year, the School District did not hire any early childhood teachers that year. Harris Aff. – Hayes ¶ 33. As for the 2001-02 school year, plaintiff Hayes was hired for an early childhood position at East Hills Elementary. Harris Aff. – Hayes ¶ 34.

### B. Mr. Devine

Like Ms. Hayes, in his Amended Complaint Mr. Devine alleges that the Pittsburgh Board of Public Education and the School District deprived him of his right to due process by passing him over as an eligible applicant for vacant teaching positions without providing him with notice or opportunity to be heard. Amended Complaint ¶¶ 14-15. He asserts that this deprivation occurred with respect to school years 1996-97, 1997-98, 1998-99 and 1999-2000. The defendants concur that Mr. Devine completed all relevant steps necessary to be placed on an eligibility list for the position of biology teacher with the School District beginning with school year 1993-94 and that each year thereafter, he filed the appropriate forms necessary to maintain a position on that list. Defs.'s M. For Summ. J. (Doc. 15 at C.A. 0-594) ¶¶ 7, 8. However, as with Ms. Hayes, defendants have put forth evidence that each instance of hiring at issue involved either dual certification hirees, or hiring actions that were otherwise legitimate by reason of the hiree being within the top 5 or top ten percent, or because not all of the applicants were available for hire and the rolling list came into play.

Prior to the 1996-97 school year, Mr. Devine was not in the top ten percent (or top five) of the eligibility list for Biology and was therefore not considered for hire. Harris Aff. – Devine ¶ 20. In 1996-97, Mr. Devine was in a position to be considered for employment in a vacant biology position. Harris Aff. – Devine ¶ 21. However, that position was offered to another individual,

18

who fell within the top five names on the eligibility list. Harris Aff. – <u>Devine</u> ¶ 22.

As for the school year 1997-98, there were no biology vacancies in the School District.
Harris Aff. – <u>Devine</u> ¶ 23. However, that year a position at Oliver High School for Alternative
Education was offered to an applicant who was listed on the 1997-98 biology eligibility list.
Harris Aff. – <u>Devine</u> ¶ 24. This position required a Secondary Education certificate as well as
experience in alternative education; the applicant fulfilled both such requirements and his name
was accordingly removed from the biology eligibility list. Harris Aff. – <u>Devine</u> ¶ 24.

As for the school year 1998-99, the only vacancy in the School District for biology was at
Schenley High School; the position was offered to an individual who was within the top five of
the "rolling" list of eligible applicants. Harris Aff. – <u>Devine</u> ¶¶ 25, 26. This position became
available after the start of the 1998-99 school year and applicants at the top of the eligibility list
were notified and reported to the School District that they had already found employment for the
school year. Harris Aff. – <u>Devine</u> ¶ 26. Applicants' names from the "rolling" top five list were
submitted; the person who was hired was the only person available for that position. Harris Aff. –
<u>Devine</u> ¶ 26. In addition, for the school year 1998-99, an individual who fell within the top five
names on the biology list who was also certified in general science was offered a general science
position at Arsenal Middle. Rucki Aff. ¶¶ 6, 7, 8.

As for the school year 1999-2000, three vacancies were filled from the biology eligibility
list. The first position was at Peabody High school and required dual certification in biology and
chemistry; plaintiff was not certified in chemistry and thus, he was not qualified for that position.
Harris Aff. – <u>Devine</u> ¶¶ 27, 28. The second vacant position was at Schenley High school and was
offered to an individual who originally was ranked number 6 on the eligibility list but became part

19

of the "rolling" top five when candidate number 2 removed herself from the eligibility list due to other employment. Harris Aff. – Devine ¶ 29. The third position was at Westinghouse High School and was offered to an individual who was within the top five of the "rolling" list of eligible candidates. Harris Aff. – Devine ¶ 30. In fact, Mr. Devine was interviewed for this position and the principal recalled that he had little experience with teaching in an urban setting, and was concerned for his safety while teaching; she also stated that he exhibited preconceived ideas about urban students which rendered him unsuitable for the teaching position. Barnett Dep. at 11, 14-15.

As for the 2000-01 school year, when plaintiff was called for an interview for a biology position, Mr. Devine stated that he was working elsewhere and was not available for an interview. Harris Aff. – Devine ¶ 31. When this occurs (an applicant indicates that he or she is working elsewhere or is not available for an interview) the applicant's name does not continue to be circulated to principals who have vacant teaching positions for that particular school year. Harris Aff. – Devine ¶ 32.

Mr. Devine removed himself from the biology eligibility list for the 2001-02 school year.

The defendants have shown– and plaintiffs have not refuted– that both plaintiffs' situations are factually distinguishable from Stana, because they were not removed from their respective eligibility lists, but rather, they were bypassed on the lists. There is no evidence that there was a policy or practice of bypassing available candidates for unconstitutional purposes. Rather, defendants have shown that both Ms. Hayes and Mr. Devine were either not qualified for the specific positions at issue, were bypassed due to their unavailability, or were interviewed and found to be unworthy of hiring.

20

We also note that in Stana, the plaintiff argued that she had a property right to be appointed by the School District to the teaching position because she was the only available person on the eligibility list when a teaching position opened. Id. at 131. The Third Circuit rejected this argument, holding that the School District retains some discretion to bypass one or more names from the list in an appropriate situation. Id. The court noted that the purpose of the Public School Code is to establish a "thorough and efficient system of public education," which could not be served if the School District were required to hire as a teacher someone about whom it received negative information after that person's name was placed on the eligibility list. Id.

Moreover, in Stana the School district and the official responsible for the eligibility list on which Stana's name appeared had an established policy for placement and rank on the list and for maintenance of names on that list for a specified period of time. Stana herself was informed by a school official that her name would remain on the list for four years; her name was removed from the list without notice and an opportunity to be heard before her time had run out. There was no such property right under the facts of these cases presently before us.

We agree with the defendants that Pennsylvania Statute 24 Pa. Stat. Ann. § 21-2110 did not confer on plaintiffs a property right not to be bypassed on this list without written notice and an opportunity to be heard. Section 21-2110 of the Public School Code addresses only how the School District must fill its teaching positions; it does not provide a method for contacting applicants to determine availability, nor does it mandate that applicants be given notice and an opportunity to be heard before they are by-passed on the list for an applicant who is available by phone contact. Therefore, the School Code does not confer on the plaintiffs a property right in their rank or to a particular type of notice before the Board hires an applicant in the top ten

21

percent who is available by telephone.

This case is clearly distinguishable from the facts in Stana, where the court found a property interest in remaining on the list once a teacher had been placed on the list. In Stana, both parties testified that the School District had a policy which was communicated to its teachers and which provided no room for discretionary removal of teachers from its eligibility list. Id. at 126. Stana's existence on the eligibility list (as one of the top three applicants) entitled her to preferred appointment, promotion and transfer opportunities. A teacher could not be removed from the list without notice and an opportunity to be heard. Id. at 124-25. However, in the cases at bar, the plaintiffs do not offer any evidence to support the allegation that the school district had a policy with regard to contacting applicants on the eligibility list, which would entitle them to a particular type of contact to determine availability or to notice and an opportunity to be heard before the Board moved down the list to an eligible applicant who was otherwise available.

One of the principal purposes of the summary judgment rules is to isolate and dispose of factually unsupported claims. Celotex, 477 U.S. at 323-24. Substantive law determines which facts are material. "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A mere subjective expectancy of property interest does not create a property interest; a property interest must arise from an independent source such as a state or federal statute, municipal ordinance or charter, an express or implied contract, or a contract implied from policies and practices of a particular institution. Perry, 408 U.S. at 601. The plaintiffs have not presented evidence of an understanding existing between them and the School District, that applicants on the eligibility list, who are unavailable by phone, would not be bypassed without

notice and an opportunity to be heard. Since we find no property interest has been created by these various means, we must dismiss plaintiffs' Fourteenth Amendment claims. "One alleging a property interest in a benefit protected by due process must go beyond showing an unsubstantiated expectation of the benefit." Carter v. City of Philadelphia, 989 F.2d 117, 119 (3d Cir. 1993). In this case, unlike Stana, the plaintiffs received the consideration to which they were entitled by reason of their status on the eligibility list. The School Board was bound to consider them for employment; it was by no means bound to hire them.

We note that the plaintiffs have not refuted the School District's showing that each time someone who ranked lower than them was hired, the School District had a completely legitimate reason for doing so. "[T]he statute is couched in mandatory language but several considerations impel us to conclude that, nonetheless, the School District retains some discretion to bypass one or more names from the list in an appropriate situation." Stana, 775 F.2d at 131.

## 2. § 1983 claims

Whether a municipal government may be held liable under § 1983 is governed by the doctrine announced in Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). There, the Supreme Court held that liability against such an entity may not be established by the *respondeat superior* doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. See Bielevicz v. Dubinon, 915 F.2d 845 (3d Cir.1990). Thus, municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' " Id., quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018). In Stoneking v. Bradford Area

23

School Dist., 882 F.2d 720 (3d Cir.1989), the court applied this reasoning specifically to the

school context and determined that, in order for the plaintiff to prevail against the Board and

District, he must convince the fact finder that, with respect to this particular teacher, the District

"with deliberate indifference to the consequences, established and maintained a policy, practice or

custom which directly caused [plaintiffs] constitutional harm."

Proving a government policy or custom can be accomplished in a number of different

ways. Bielevicz, 915 F.2d at 849-50. "Policy is made when a 'decisionmaker, possessing final

authority to establish municipal policy with respect to the action,' issues an official proclamation,

policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990), quoting

Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not

specifically endorsed or authorized by state or local law, is so well-settled and permanent as

virtually to constitute law. Id. , citing Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.)

("Custom may be established by proof of knowledge and acquiescence."), cert. denied, 492 U.S.

919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989)).

Both plaintiffs argue that there are three general policies or customs that caused their

injuries. First, plaintiffs assert that there is a "ten ring" policy which authorizes principals or their

support staff to consider an applicant "unavailable" for hire if his or her phone rings unanswered

ten times. Amended Complaint ¶ 10. Next, plaintiffs assert that there is a custom or policy of

passing over applicants within the top five or top ten percent without contacting them to offer

them an opportunity to be interviewed for that particular position. Amended Complaint ¶¶ 8, 14.

Plaintiffs allege that they were deprived due process because they were passed over for an

24

interview without "notice and an opportunity to be heard." Amended Complaint ¶¶ 14, 15.

Finally, plaintiffs assert that there is a policy or custom of hiring applicants who are not in the top five or ten percent of the applicable eligibility list. Amended Complaint ¶ 8.

As to the alleged "ten ring rule", the defendants argue that the record indicates the following:

• Principals and/or their support staff make several attempts to contact applicants within the top five or top ten percent. Barnett Dep. at 6-7, 13; Kemp Dep. at 6-9; Harris Affidavit ¶ 8.

• Messages are left and times and dates of phone calls are recorded. Kemp Dep. at 7; Barnett Dep. at 6-7.

• If, after several documented attempts are made, the an applicant is not reached, she is considered unavailable. Kemp Dep. at 8-9; Barnett Dep. at 13.

Defendants argue that none of the individuals deposed in this litigation provided any factual support to plaintiffs' arguments that a "ten ring" rule exists. We find that plaintiffs have not shown there to be any genuine issue of material fact with respect to this alleged policy.

As to the alleged policy or custom of passing over applicants without contacting them, the defendants argue that the record indicates the following:

• With respect to Mr. Devine, Principal Marilyn Barnett recalled interviewing him for a position at Westinghouse High School. Barnett Dep. at 11.

• Other principals who were deposed in this action had no specific memory of interviewing Mr. Devine, but testified that he would have been contacted in one manner or another had he been in the top five or top ten percent. Kemp Dep. at 17; Nicklos Dep. at 14.

• Neither Hayes nor Devine have sufficiently refuted defendants' evidence that several

25

attempts were made to contact applicants on the eligibility list.

• Hayes has not shown any evidence that she was qualified for the positions which she has identified were offered to Wanielista, Ennis and Sleight-Darsie.

• Although plaintiffs had the opportunity to depose principals or other employees to determine whether a custom or policy exists, the plaintiffs declined to do so.

As to the alleged policy of hiring applicants outside of the top five or top ten percent, defendants argue that both plaintiffs have continually failed to understand that there is a "rolling" eligibility list. In other words, applicants are removed for a variety of reasons including the school official's failure to make contact with them, obtainment of other employment, and no longer being interested in the position. Harris Aff. ¶ 10. Thereafter, other names are added to the eligibility list. Harris Aff. ¶ 9. According to the defendants, plaintiffs have failed to provide any evidence, other than mere speculation, that there was a custom or policy of hiring applicants who were outside the top five or top ten percent.

Plaintiff must demonstrate policy caused constitutional injury and that a municipal action was taken with deliberate indifference to known or obvious consequences. Plaintiffs have not done so. We find that plaintiffs have failed to establish that there was an unconstitutional policy or custom in place, or that the School District in any way supported a violation of constitutional rights, let alone a causal link between execution of the policy and the injury suffered. Principals are free to select among the top ten percent of the eligibility list without constraints to select in any particular order. Brickhouse v. Spring Ford Area School Dist., 625 A.2d 711, 714 (Pa. Commw. 1993). There is no restriction in the Code or elsewhere which would prevent a principal from choosing to hire a teacher with a more comprehensive or flexible certification. Moreover,

26

plaintiffs have not identified any policymaker who under state law could have imputed § 1983 liability to either the Board or the School District.

The § 1983 claims are dismissed as to the School Board or School District.

In addition, the individual defendants in this action have been named in either their official or individual capacities. A § 1983 action against individual defendants in their official capacities as members of the governing body of a local government unit, like an action against the local government entity itself, must be supported by an allegation that the entity's "policy or custom"played a part in the violation of federal law. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quotation and citations omitted). The plaintiffs have not been able to show expressly or by inference any evidence which would implicate any official policy or practice in connection with a relevant action carried out by any individual defendant in his or her official capacity. The motion for summary judgment must be granted as to all individual defendants named in their official capacities.

The individual defendants named in their personal capacities are either members of the Board of School Directors of the Pittsburgh Area School District, employees or former employees of the School District. Personal liability attaches under § 1983 if an official, acting under color of state law, caused the deprivation of a federal right. Kentucky v. Graham, 473 U.S. at 166, citing Monroe v. Pape, 365 U.S. 167 (1961)). Mere negligence, indifference, or ratification of the acts of others is not sufficient to establish a claim. McDonald v. Illinois, 557 F.2d 596, 601 (7th Cir.1977), citing Wood v. Strickland, 420 U.S. 308, 322 (1975)). In the case of supervisory officials, plaintiff must show some personal involvement in the deprivation. Id. There must be an "affirmative link between the occurrence of the various incidents of [deprivation of rights] and the

27

adoption of any plan or policy by [the supervisory officials] express or otherwise showing their authorization or approval of such misconduct." Rizzo v. Goode, 423 U.S. 362 (1976). Plaintiffs have not shown any personal involvement in any of the alleged deprivation(s) by any of the individual defendants. Neither Ms. Hayes nor Mr. Devine deposed any board member and did not make any allegations against any particular board member during her deposition. We will grant the defendants' motion for summary judgment in this regard.

## B. Count III – Action in Mandamus[4]

In Count III, entitled "Action in Mandamus", plaintiffs ask that we "direct the School Board to retain Plaintiff[s] on the eligibility list, give Plaintiff[s] proper notice and opportunity if for some reason [they are] bypassed, and to award job placement into a full time teaching position with the Pittsburgh Public Schools. Amended Complaint ¶ 27.

> A writ of mandamus ... is an extraordinary remedy which compels official performance of a ministerial act or mandatory duty, as opposed to a discretionary act.... The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure.... A writ of mandamus may be issued, only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and lack of any other appropriate and adequate remedy....

Africa v. Horn, 701 A.2d 273, 275 (Pa. Commw. 1997). (citations omitted)

Defendants argue that plaintiffs have failed to establish that they had a "clear legal right" to notice and an opportunity to be heard before being bypassed on the eligibility list, citing the Reed decision.   They also argue that mandamus is improper because the plaintiffs had another appropriate and adequate remedy to seek redress, namely, plaintiffs could have requested a local

---

4

Justice requires us to exercise pendant jurisdiction over the remaining state court claims.  The parties have expended untold time and energy on discovery and briefing; to remand the remaining state law causes of action would unnecessarily delay adjudication of these unfounded claims.

agency hearing before the School Board pursuant to Local Agency Law. 2 Pa.C.S. §§ 101, et seq. and § 553.

We agree that the plaintiffs have failed to show a clear legal right to the relief requested and they had another appropriate and adequate legal remedy at their disposal. Even assuming the employment decisions by the defendants were constitutionally suspect, no such hearing was ever requested by either plaintiff, and no adjudication that would trigger the protection of the Local Agency Law. The issuance of a writ of mandamus would not be proper under these circumstances, and therefore, Counts III of the Amended Complaints are dismissed.

### C. Count IV – Action for Declaratory Judgment

In Count IV, plaintiffs ask that we "declare [their] right to be retained on the list and declare [their] right to be given proper notice and opportunity to be heard in the event [they] are bypassed...." Amended Complaint ¶ 34.

"The issuance of a declaratory judgment is a matter of judicial discretion which should only be exercised to illuminate an existing right, status or legal relation." Avrich v. General Accident Insurance, 367 Pa.Super. 248, 532 A.2d 882, 883 (1987) (citations omitted). Furthermore, "[i]n seeking declaratory relief, a plaintiff must establish an interest which must be a direct, substantial and present interest, as contrasted with a remote or speculative interest. For declaratory relief to be appropriate, there must exist an actual controversy.... Declaratory judgment is not appropriate to determine rights in anticipation of events which may never occur. It is an appropriate remedy only where a case presents antagonistic claims indicating imminent and inevitable litigation." Id. 532 A.2d at 884. As was discussed in more detail supra, we find that the plaintiffs have not established an "existing right" and therefore, the request for declaratory

29

judgment is denied and Counts IV of the Amended Complaints are dismissed.

## IV. Conclusion

For the foregoing reasons, we will enter judgment in favor of all defendants and against

the plaintiffs. An appropriate order will be entered.

_/s/ Maurice B. Cohill, Jr._

Maurice B. Cohill, Jr.
Senior United States District Court Judge

Dated: March 8, 2007

30